**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**LESHIA H.,**

      **Plaintiff,**

**vs.**                                                                    **CIVIL ACTION NO. 3:22-CV-00569**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER**
**OF SOCIAL SECURITY,**

      **Defendant.**

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered December 13, 2022 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in Support of Complaint and the Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 8, 9)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** the Plaintiff's request for remand (ECF No. 8), **DENY** the Defendant's request to affirm the decision of the Commissioner (ECF No. 9); **REVERSE** the final decision of the Commissioner; and **REMAND**

1

this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed her application for DIB on October 8, 2019 alleging her disability began on October 3, 2019 due to a kidney transplant, multiple myeloma, type 2 diabetes, high blood pressure, light change disposition disorder, and a nodule in her left lower lobe of lung.[1] (Tr. at 26, 668) Her claim was initially denied on July 14, 2020 and upon reconsideration on October 13, 2020 (Tr. at 26, 542-546, 553-560). Thereafter, the Plaintiff filed a written request for hearing on November 18, 2020. (Tr. at 561-562)

An administrative hearing was held on March 1, 2022 before the Honorable Valerie A. Bawolek, Administrative Law Judge ("ALJ"). (Tr. at 41-61) On April 8, 2022, the ALJ entered an unfavorable decision. (Tr. at 23-40) On April 27, 2022, the Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 641-643) The ALJ's decision became the final decision of the Commissioner on October 17, 2022 when the Appeals Council denied the Plaintiff's Request. (Tr. at 8-14)

On December 12, 2022, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Defendant, (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 4) Subsequently, the Plaintiff filed a Brief in Support of Complaint (ECF No. 8); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No.

---

[1] The Plaintiff indicated that she stopped working October 3, 2019 due to her conditions, but also because the "company did away with [her] job." (Tr. at 668)

9), to which the Plaintiff filed her Reply Brief (ECF No. 10). Consequently, this matter is fully briefed and ready for resolution.

## Plaintiff's Background

The Plaintiff was 52 years old as of the alleged onset date, considered a "person approaching advanced age", though by the administrative hearing had transitioned into a new age category, and subsequently considered a "person of advanced age" during the underlying proceedings. See 20 C.F.R. § 404.1563(d), (e). (Tr. at 522, 46) She graduated high school and did not attend special education classes. (Tr. at 669) For the last thirty years before applying for benefits, she worked as a customer service representative at a uniform rental company. (Id.)

## Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative

Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion

reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements through December 31, 2024. (Tr. at 28, Finding No. 1) Next, the ALJ determined the Plaintiff satisfied the first step of the sequential evaluation process because she had not engaged in substantial gainful activity since the alleged onset date of October 3, 2019. (Id., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairments: morbid obesity; type II diabetes mellitus; multiple myeloma; and residuals of kidney disease/transplant. (Tr. at 29, Finding No. 3) At the third inquiry, the ALJ concluded the Plaintiff's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform light work except

> she can stand and/or walk no more than 4 hours total during an 8-hour workday. She can never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs. She must avoid all exposure to extreme heat and extreme cold.

6

(Tr. at 30, Finding No. 5)

At step four, the ALJ found the Plaintiff is capable of performing her past relevant work as a customer service representative, classified as sedentary work, notwithstanding the Plaintiff described her past relevant work as performed at the light exertional level. (Tr. at 34, Finding No. 6) Finally, the ALJ determined the Plaintiff had not been under a disability from October 3, 2019 through the date of the decision. (Id., Finding No. 7)

**<u>The Plaintiff's Challenges to the Commissioner's Decision</u>**

The Plaintiff alleges the ALJ failed to perform the psychiatric review technique pursuant to Section 404.1520a, despite the finding her mental impairments were not severe – all she needed to show was a medically determinable mental impairment to trigger the ALJ's duty to analyze these impairments under the special technique. (ECF No. 8 at 2-4) Further, because this case hinged on whether the Plaintiff could perform her past relevant work, categorized as semi-skilled, even a mild diminution of her mental capabilities is outcome determinative. (Id. at 4)

The ALJ also failed to specially analyze the Plaintiff's use of a cane in the RFC or hypothetical question, despite acknowledging that she was prescribed a cane and used it, thus depriving the vocational expert of input as to whether the Plaintiff's cane use precluded her performing past relevant work. (Id. at 4-6)

Lastly, the Plaintiff argues that the ALJ violated SSA policy (including the Regulations, Social Security Rulings (SSR), Social Security Acquiescence Rulings (AR), Program Operations Manual System (POMS), and the Hearings, Appeals and Litigation Law manual (HALLEX)) by having a medical expert testify before hearing the Plaintiff's testimony. (Id. at 6-7) While the Commissioner may argue that HALLEX is not judicially enforceable, other courts have found that

remand is required where an adjudicator fails to abide by such rules. (Id. at 7-8) However, the issue here is that the medical expert did not have the benefit of hearing the entire evidence of record, despite the ALJ's apparent acknowledgement that the psychological expert needed to hear the entirety of the Plaintiff's testimony; the ALJ needs to be instructed that HALLEX is not optional, but mandatory[2]; further, because procedural due process was violated, remand is required. (Id. at 8-9) The Plaintiff also notes that in Brooks v. Kijakazi, No. 5:22-cv-00310 (N.D.W. Va. 2023), the Commissioner agreed to voluntary remand on this exact issue, thus, this case ought to be reversed and remanded for an outright award of benefits or for further administrative proceedings. (Id. at 10)

In response, the Commissioner contends that the ALJ reasonably found that the record failed to demonstrate that the Plaintiff had a medically determinable mental impairment, which was substantiated by the psychological expert, Dr. Gary Bennett, who testified that the record did not show a finding of severe mental impairment, or even mild limitations in any area of mental functioning. (ECF No. 9 at 5-6) The Commissioner also argues that the ALJ was under no duty to assess the severity of her mental condition under the special technique pursuant to Section 404.1520a because she did not find the Plaintiff had a medically determinable mental impairment. (Id. at 6-7) No medical expert of record opined the Plaintiff had a severe mental impairment or had even mild limitations in any area of mental functioning. (Id. at 8)

---

[2] In support of this argument, the Plaintiff attaches an exhibit: two Appeals Council remand orders from claimants based in Alaska, and one remand order from a claimant based in Maryland – in those remand orders, the SSA remanded, based in part, that the ALJ did not summarize the claimants' current medications or sources and types of treatment prior to the medical experts' testimonies, as they were not present to hear this pertinent testimony from the claimants themselves. (ECF No. 8-1)

The ALJ also properly found that the Plaintiff had no medical requirement for a cane, which is corroborated by the testimony of the medical expert, Dr. Kweli Amusa, and no other physician of record found the Plaintiff required a cane, or had greater limitations as found by the ALJ, as the Plaintiff was observed to be capable of ambulating normally throughout the record. (Id. at 8-10)

Finally, the Commissioner argues that the Plaintiff's argument that remand is required because the ALJ violated HALLEX by taking testimony from a medical expert who had not heard her testimony fails: first because numerous courts throughout this Circuit have determined that HALLEX lacks the force of law; second because her reliance on SSR 13-2p that HALLEX is binding is misplace because that Ruling pertains to cases involving drug and alcohol addiction, which is not present here; third because the non-binding, out-of-circuit district court cases, the district court found the ALJ was not required to abide by HALLEX; and fourth, any alleged error on this issue is harmless, because the medical expert in this case reviewed and testified in detail about the Plaintiff's treatment record. (Id. at 10-12) Based on the record, the Commissioner contends that substantial evidence supports the ALJ's decision and asks this Court to affirm. (Id. at 12)

In reply, the Plaintiff emphasizes that the ALJ's failure to complete the mandatory special technique warrants remand, even if merely for "rote completion" (ECF No. 10 at 1; quoting Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005). Further, it is clear that the ALJ found a medically determinable mental impairment, since she found they were also not severe; remand is necessary because this Court is unable to determine if the ALJ's failure to perform the special technique is harmless. (Id. at 1-3) The Commissioner's argument that the ALJ implicitly found that the Plaintiff did not need a cane is nothing more than post hoc rationalizations that violates the Fourth Circuit's

holding in <u>Patterson v. Bowen</u>, 839 F.2d, 225, n.1 (4th Cir. 1988) (applying <u>SEC v. Chenery Corp.</u>, 318 U.S. 80, 87 (1943) in review of SSA decisions). (<u>Id.</u> at 3-4) Finally, as the Commissioner concedes that HALLEX was violated in this case, it must be remanded, and reminds the Court that the Commissioner had agreed to voluntary remand for this same issue in <u>Brooks v. Kijakazi</u>, No. 5:22-cv-310 (N.D.W. Va. 2023).[3] (<u>Id.</u> at 4-6) For these reasons, this case must be remanded. (<u>Id.</u> at 6)

## The Relevant Evidence of Record[4]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

## The Medical Record:

### Mental Health Treatment History:

---

[3] The undersigned finds that the Plaintiff's argument on this particular issue is disingenuous: while the <u>Brooks</u> matter was indeed remanded voluntarily, the docket from the Northern District only indicates that the Commissioner's motion for remand was generic, a bare bones request for remand, without a reason provided; and the order granting same likewise provided no reason for the remand. In any event, it is also the undersigned's understanding that in <u>Brooks</u>, the ALJ issued a decision *without a hearing at all*. To that extent, the matter at bar is quite distinguishable.

Additionally, while the Plaintiff cites cases within this Circuit that supposedly remanded on the basis of HALLEX violations, this is also not accurate: in <u>Pickett v. Astrue</u>, 895 F.Supp.2d 720 (E.D. Va. 2012), the matter was remanded because of a borderline age issue, and while HALLEX was referenced, the court did not remand based on a HALLEX violation; in <u>Kendall v. Astrue</u>, 906 F.Supp.2d 433 (D. Md. 2012), the court reversed for an award of benefits, but on the basis that the *ALJ failed to comply with the district court's order* to apply SSR 85-15 and SSR 82-63, not because of a HALLEX violation; and finally, in <u>Way v. Astrue</u>, 789 F.Supp.2d 652 (D.S.C. 2011), the court remanded the matter because of a more egregious prejudicial error – the ALJ did not provide the claimant a supplemental hearing even after having indicated that a request for same would be granted, and although the claimant timely requested a supplemental hearing to consider his treating physician's opinion evidence, the claimant was not afforded a supplemental hearing, thus triggering due process concerns.

[4] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

Treatment notes from the Plaintiff's primary care provider predating her alleged onset date show that the Plaintiff denied any symptoms of anxiety or depression. (Tr. at 29, 1554-1571) The record indicates that the Plaintiff received medication for anxiety symptoms by her primary care provider sometime in early 2021 (Tr. at 29, 1160), but by January 2022, she denied a history of anxiety and depression (Tr. at 29, 1964-1981), and continued to do so (See e.g., Tr. at 107, 118, 129).

**The Administrative Hearing:**

<u>Dr. Kweli Amusa, Medical Expert Testimony:</u>

Dr. Amusa testified that despite the Plaintiff having severe physical impairments, none met listing criteria. (Tr. at 47) She further testified that the Plaintiff be limited to not lifting greater than 20 pounds on occasion and ten pounds frequently; to standing and walking to just four hours in an 8-hour workday; that postural be limited to occasional; that she avoids extreme heat and cold, ladders, ropes, and scaffolds. (Tr. at 48) Dr. Amusa noted that the record did not support a finding of severe weakness or fatigue while the Plaintiff is on medications, and that her medications do not cause her any significant problems with stamina. (Tr. at 48-49)

<u>Harry Tanzey, Vocational Expert Testimony:</u>

Mr. Tanzey testified that while the Plaintiff's past relevant work as a customer service representative is classified as sedentary, per his review of the file, the Plaintiff performed at the light exertional level. (Tr. at 51)

<u>Dr. Gary T. Bennett, Psychological Expert Testimony:</u>

Dr. Bennett testified that he did not see any mental impairment alleged in the record, but noted that the Plaintiff was prescribed medication that is for treatment of anxiety, and noted that

some treatment notes from Family Care Health Clinic showed a diagnosis of mixed anxiety and depressive disorder. (Tr. at 51)  Dr. Bennett opined that the Plaintiff's mental impairments were not severe, although given her diagnosis and being treated with anxiety medication, he determined that would be medically determinable. (Tr. at 59) As far as any limitations in B criteria, Dr. Bennett testified that the Plaintiff's testimony indicated she had some issues with concentration, but there "is nothing in the record" to support that. (Id.)

The Plaintiff's Testimony:

The Plaintiff testified that she is unable to work because her medications make it hard for her to stay focused on doing the tasks at hand, also, their side effects causes weakness in her joints and muscles. (Tr. at 52-53) Although she conceded that her job was done away with at the time she stopped working, she stated that she intended to leave anyway because of her medical issues, especially swollen feet from sitting all day. (Tr. at 53-54) She would elevate her feet while at work to relieve the swelling, and used a cane "because of the weight on my feet." (Tr. at 55) The Plaintiff said she walked "with a gait" because she lost quite a bit of functioning in her left leg after having a tumor removed from her spinal cord in 2009; she was then prescribed a cane. (Tr. at 56) The Plaintiff testified that she uses a cane for walking to prevent falls due to weakness; she estimated that she could stand without her cane for about ten to fifteen minutes only. (Id.) For her water retention, the Plaintiff takes a water pill that causes her to use the restroom about eight to ten times in a typical day. (Tr. at 57) She had also been diagnosed with diabetes shortly after receiving a kidney transplant, and the antirejection medication affects her diabetes, making it uncontrolled where she had to give herself insulin shots. (Tr. at 58)

**Scope of Review**

12

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**<u>Analysis</u>**

<u>The "Special Technique" Pursuant to Section 404.1520a:</u>

At the second step in the sequential evaluation process, the ALJ observed that the record contained evidence of mental health treatment, *supra*, but noted that Dr. Bennett determined that the record did not support a severe mental impairment, or significant limitations in the Plaintiff's memory or concentration. (Tr. at 29) Therefore, the ALJ determined that the Plaintiff's mental impairments were not severe. (<u>Id</u>.) There is no dispute that the ALJ did not perform the special

technique in this case. The Fourth Circuit has determined that an adjudicator's failure to follow the special technique under Section 404.1520a "does not automatically require remand", but depending on the facts, may not necessarily be a harmless error. See Patterson v. Commissioner of Social Security Administration, 846 F.3d 656 (4th Cir. 2017). However, "failure to properly document application of the special technique will rarely, if ever, be harmless because such a failure prevents, or at least substantially hinders, judicial review." Id. at 662.

In this case, the evidence related to the Plaintiff's mental health treatment is scant, and it is noted that the Plaintiff did not allege any mental impairment in connection with her application for benefits. Regardless, the undersigned disagrees with the Commissioner's assertion that the ALJ found that the Plaintiff "failed to demonstrate a medically determinable mental impairment" (see ECF No. 9 at 6, citing Tr. at 29). What the ALJ found was "the claimant's mental impairments are not severe" (Tr. at 29); further, it is clear that the ALJ found the Plaintiff had medically determinable mental impairments, otherwise, Dr. Bennett most likely would not have provided testimonial evidence. Moreover, Dr. Bennett opined that the medical record demonstrates a medically determinable mental impairment (Tr. at 59). It is further notable that in response to her representative's question as to why she is unable to work, from the onset, the Plaintiff testified that side effects from her medications caused her problems with maintaining focus on the tasks at hand. (Tr. at 52)

Thus, based on these particular facts, the Plaintiff *had* alleged a mental impairment, the ALJ found the Plaintiff had a medically determinable mental impairment, therefore, the ALJ was obligated to perform the "special technique" under Section 404.1520a(b) ("If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and

14

laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with [the technique]").

There is no dispute the ALJ's finding that the Plaintiff's mental impairments were not severe, based on Dr. Bennett's unrebutted testimony and the Plaintiff's successful treatment of anxiety symptoms through medication[5], and there is no other evidence in the record that suggests any greater functional limitations described in Paragraph B criteria than those observed by Dr. Bennett.[6] Of further interest here is that the Plaintiff's application for DIB was never reviewed by any psychological consultants at either the initial or reconsideration levels of review. Despite these factual underpinnings, the undersigned is not adopting the Plaintiff's argument that remand is always necessary even if the purpose of the remand is to have an adjudicator go through the motions of completing the "special technique", as this essentially puts form over substance, and contrary to Patterson, *supra*. (See ECF No. 10 at 1) Had the evidence simply demonstrated that the Plaintiff had no medically determinable mental impairment, and no related functional limitations, perhaps the inquiry would have ended there. However, from the Plaintiff's testimony, Dr. Bennett recognized she endorsed some issues with concentration – this is unrebutted evidence. Given the mandatory language under Section 404.1520a (i.e. "we must"), and the evidence showing at least some limitation in the Plaintiff's ability to concentrate, the ALJ was compelled to proceed with the "special technique", and to that extent, the ALJ erred. Additionally, whether that limitation has any

---

[5] See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.")

[6] See Wall v. Saul, 2021 WL 5225792, at *8 (S.D.W. Va. Jun. 2, 2021) ("the testimony of a non-examining physician can be relied upon when it is consistent with the record.") (quoting Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986) (internal citation omitted)) (Tinsley, M.J.), *report and recommendation adopted*, 2021 WL 5230989 (S.D.W. Va. Nov. 9, 2021) (Copenhaver, J.).

effect on the Plaintiff's ability to perform her past relevant work must be determined by the ALJ, since this had not been appropriately fleshed out or explained in the written decision.[7] In order for this Court to find substantial evidence supports the ALJ's conclusion on this issue would require it to "guess about how the ALJ arrived" at this conclusion, thus necessitating remand. See Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015).

Accordingly, the undersigned **FINDS** that the ALJ's second step determination as it relates to the Plaintiff's mental impairments is not supported by substantial evidence, given the failure to perform the "special technique" pursuant to the Regulations.

The Plaintiff's Use of a Cane:

As mentioned above, the Plaintiff contends that the ALJ's failure to consider her need for a cane is prejudicial, because it could have precluded her from performing her past relevant work as it is generally performed, that is, at the sedentary level.

The SSA issued Social Security Ruling ("SSR") 96-9p that provides guidance when the issue of hand-held assistive devices arises:

> **Medically required hand-held assistive device:** To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

---

[7] At step four, the ALJ found that "[i]n comparing the claimant's residual functional capacity with the physical and *mental* demands of this work, the undersigned finds that the claimant is able to perform it as generally performed." (Tr. at 34) (emphasis added)

See, *Titles II and XVI: Determining Capability to do Other Work--Implications of a Residual Functional Capacity For Less Than a Full Range of Sedentary Work*, SSR 96-9p, 1996 WL 374185, at *7. (**bold** in original)

The ALJ acknowledged the Plaintiff's testimony regarding her cane use, noting that she was prescribed a cane in 2009 following removal of a tumor from her spinal cord and that she continued to use a cane and that she could not stand longer than fifteen minutes at a time in one space; the ALJ also noted that Plaintiff testified that she was worried about falling down in front of others. (Tr. at 31) Further, the ALJ noted that the Plaintiff said she sat most of the time while working, and would elevate her feet on an ottoman most of the workday. (Id.)

From the medical evidence, the ALJ discussed a treatment record from the Plaintiff's primary care provider in January 2021, wherein the Plaintiff reported cleaning out her house, had improved energy and activity level, and during a follow-up appointment to Duke University Medical Center in April 2021, the Plaintiff reported ankle soreness, but it improved after activity. (Tr. at 32, 1092-1132, 1133-1286, 1388-1547)[8] The ALJ reviewed additional records from the Plaintiff's primary care provider from July 26, 2021, which noted the Plaintiff reported "walking daily" and she displayed normal gait and station, and from January 2022, which again noted the

---

[8] The undersigned notes that from the records cited by the ALJ, the Plaintiff's primary care provider treatment notes does not mention the Plaintiff's cane use, but of relevance here, she was frequently observed to have normal gait and station and/or ambulated normally. (See, Tr. at 1097, 1103, 1109, 1115) These records are dated from July 27, 2020 through February 17, 2021. Significantly, a Duke Health medical record dated October 23, 2020, in response to the Plaintiff's inquiry to help with her application for disability, Loretta Phillips, ANP, stated, "Receiving a kidney transplant would not qualify you for this, and I would have to answer honestly that I believe you are able to work." (Tr. at 1134)

Plaintiff displayed normal gait and station on examination. (Tr. at 33, 1964-1981) Neither record mentioned the Plaintiff needed a cane or used one.[9]

While it is true that state agency medical consultants' noted the Plaintiff's use of a cane, their observations were based on the Plaintiff's statements in her Function Reports. (Tr. at 524, 539, 692-699, 708-715) Regardless, both medical consultants opined that the Plaintiff remained capable of light exertional work, which the ALJ found persuasive based on the record of evidence. (Tr. at 34, 522-530, 532-541) The ALJ also found Dr. Amusa's opinion persuasive, who also opined that based on the record, the Plaintiff remained capable of light exertional work with standing and walking no more than four hours total during an eight-hour workday. (Tr. at 33) Significantly, Dr. Amusa testified that "based on the physical examinations detailed in the record, she found nothing to restrict functioning in the claimant's lower extremities." (Id.)

In short, there is nothing in the record, including any medical opinion, that the Plaintiff's cane use fell within the parameters endorsed by SSR 96-9p; thus, the ALJ did not err by failing to include this in the RFC assessment.[10] Accordingly, the undersigned **FINDS** the ALJ's failure to account for the Plaintiff's cane use is not erroneous.

<u>HALLEX/POMS Violation:</u>

Although the Plaintiff has referred this Court to consider holdings by other courts outside

---

[9] The undersigned further notes that in the medical records submitted after the hearing, and four months following the ALJ's decision, the Plaintiff continued to display normal gait and station and ambulating normally; indeed, the Plaintiff was "[e]ncouraged to continue to increase activity", and there was no mention of a cane. (Tr. at 68-69)

[10] It is well known that a claimant's RFC is the most she can perform despite her limitations and that the RFC determination is reserved exclusively to the Commissioner. See 20 C.F.R. §§ 404.1545(a), 404.1527(e). As noted herein, there is no evidence, let alone opinion evidence, from any source that the Plaintiff was more limited physically than found by the ALJ. Thus, to the extent the Plaintiff contends her cane use may have eroded the sedentary exertional job base, the undersigned finds this argument lacks merit.

this Circuit that found an adjudicator's failure to follow SSA policies set forth in the Program Operations Manual System (POMS) and the Hearings, Appeals and Litigation Law manual (HALLEX) requires remand – because those courts determined that those provisions are not discretionary, but mandatory per SSA policy. In this case, the ALJ allowing Dr. Amusa to testify prior to hearing the Plaintiff's testimony violated HALLEX I-2-6-70(b) – ostensibly resulting in Dr. Amusa giving an opinion that was not based on all the evidence. As pointed out by the Commissioner (ECF No. 9 at 10-12), the Fourth Circuit has not provided any guidance as to whether HALLEX is judicially enforceable, but other district courts within this Circuit have held that HALLEX does not create judicially enforceable rights. See Young v. Colvin, 2014 WL 1874984, at *3 (W.D.N.C. May 9, 2014); Shrader v. Astrue, 2013 WL 1192315, at *3 (N.D.W. Va. Mar. 22, 2013); Harris v. Astrue, 2012 WL 7785082, at *6 (N.D.W. Va. Nov. 30, 2012), *report & recommendation adopted*, 2013 WL 1187151 (N.D.W. Va. Mar. 21, 2013); Melvin v. Astrue, 602 F. Supp. 2d 694, 704 (E.D.N.C. 2009); see also, Schweiker v. Hansen, 450 U.S. 785, 789 (1981) ("the Claims Manual is not a regulation. It has no legal force and does not bind the SSA.").

In this case, Dr. Amusa reviewed and testified in detail about the Plaintiff's treatment record, and significantly, found she remained capable of work at the light exertional level, and importantly, that there was nothing in the evidence of record that indicated that the Plaintiff's treatment or her prescribed medications caused any significant problems with her stamina, regarding her ability to complete an eight-hour workday on a regular basis. (Tr. at 48-49) Although the Plaintiff argues that Dr. Amusa should have testified after the Plaintiff, but she does not identify what evidence, except for the Plaintiff's testimony, rendered Dr. Amusa's RFC opinion incomplete

– this is significant because while the ALJ adopted Dr. Amusa's RFC opinion, ultimately, the ALJ is the final arbiter on that issue, and she heard all the evidence of record, including the Plaintiff's testimony.

In sum, the undersigned **FINDS** the ALJ's failure to have Dr. Amusa, the medical expert, testify after hearing the Plaintiff's testimony in violation of HALLEX is of no moment, given the paucity of jurisprudence on that particular issue within this Circuit. Further, given the overall evidence of record concerning the Plaintiff's physical impairments, the undersigned further **FINDS** that the ALJ did not err by relying on Dr. Amusa's medical opinion, and thus, the resulting RFC assessment is supported by substantial evidence.

Nevertheless, the undersigned further **FINDS** the ALJ's unfavorable decision is not supported by substantial evidence, for having failed to complete the "special technique" under Section 404.1520a despite acknowledging that the Plaintiff alleged a mental impairment.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **GRANT** the Plaintiff's request for remand (ECF No. 8), **DENY** the Defendant's request to affirm the decision (ECF No. 9), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings so that the ALJ may properly complete the "special technique" as stated herein.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District

Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: May 15, 2023.



Omar J. Aboulhosn
United States Magistrate Judge